UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARK MCKINLEY,

      Plaintiff,     **PLAINTIFF'S FOURTH**
               **AMENDED COMPLAINT**

    -against-

KYLE CREVATAS, Sh. #24662,   20 Civ. 3606 (KPF)
SEAN BROWN, Sh. #41,
LOGAN PAYANO, Sh. # 28,    Jury Trial Demanded
EDGAR GARCIA, Sh. #3118, and
NYPD UNDERCOVER OFFICER UC 376, all
NYPD Officers being sued individually,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    Plaintiff, by his attorneys Sivin, Miller & Roche, LLP, complaining of

defendants, alleges as follows, upon information and belief:

### THE PARTIES, JURISDICTION and VENUE

    1.  That at all times herein mentioned, plaintiff was and is a United States

citizen and resident of the State of New York.

    2.  That this Court has jurisdiction over this action in that the causes of

action herein arise under 42 U.S.C. § 1983.

    3.  That venue is proper in the Southern District of New York pursuant to

28 U.S.C. § 1391(a) in that the events giving rise to this action occurred in this district.

    4.  That at all times herein mentioned, the City of New York (hereinafter

"the City") was and is a municipal corporation, organized and existing under and by virtue

of the laws of the State of New York.

5.  That at all times herein mentioned, the City operated, controlled, and maintained a police force known as the New York Police Department (hereinafter "the NYPD").

6.  That at all times herein mentioned, defendant Kyle Crevatas (hereinafter "Crevatas") was and is employed as a police officer with the NYPD.

7.  That at all times herein mentioned, Crevatas was acting within the course and scope of his employment with the NYPD.

8.  That at all times herein mentioned, Crevatas was acting under color of state law.

9.  That at all times herein mentioned, defendant Sean Brown (hereinafter "Brown") was and is employed as a detective with the NYPD.

10.  That at all times herein mentioned, Brown was acting within the course and scope of his employment as a detective with the NYPD.

11.  That at all times herein mentioned, Brown was acting under color of state law.

12.  That at all times herein mentioned, defendant Logan Payano (hereinafter "Payano") was and is employed as a detective with the NYPD.

13.  That at all times herein mentioned, Payano was acting within the course and scope of his employment as a detective with the NYPD.

14.  That at all times herein mentioned, Payano was acting under color of state law.

15.  That at all times herein mentioned, defendant Edgar Garcia (hereinafter "Garcia") was and is employed as a police officer with the NYPD.

16.  That at all times herein mentioned, Garcia was acting within the course and scope of his employment as a police officer with the NYPD.

17.  That at all times herein mentioned, Garcia was acting under color of state law.

18.  That at all times herein mentioned, defendant NYPD Undercover Officer UC 376 (hereinafter "UC 376") was and is employed as a police officer with the NYPD.

19.  That at all times herein mentioned, UC 376 was acting within the course and scope of his employment as a police officer with the NYPD.

20.  That at all times herein mentioned, UC 376 was acting under color of state law.

## FACTS

21.  Plaintiff repeats and realleges each and every allegation contained above as though fully set forth at length herein.

22.  That on March 27, 2018, plaintiff was lawfully inside his building at 64 Essex Street, New York, NY, waiting for an elevator to take him to his seventh floor apartment.

23.  That while waiting for the elevator, plaintiff was approached by several NYPD officers, including but not limited to defendants Crevatas, Payano, and Garcia.

24.  That neither Crevatas, Payano, Garcia, nor any of the other officers who approached plaintiff identified themselves as police officers, and none was dressed in a police uniform.

25.   That plaintiff did not know that any of the individuals who approached him were police officers, and none of them initially said or did anything from which a reasonable person would discern that they were police officers.

26.   That Crevatas, Payano, Garcia, and the other NYPD officers (hereinafter referred to collectively as "the officers"), acting collectively and in concert with each other, then tackled plaintiff to the ground, kicked and punched plaintiff multiple times, and searched through plaintiff's pockets.

27.   That plaintiff, thinking he was being robbed, began screaming for help.

28.   That the officers then forcibly applied handcuffs to plaintiff.

29.   That after plaintiff was handcuffed, the offices continued to use excessive force against him, which force included, but was not limited to, being kicked in the face.

30.   That no drugs, weapons, or other contraband were recovered from plaintiff, and at least one of the officers acknowledged so at the scene.

31.   That despite having recovered no drugs, weapons, or other contraband from plaintiff, and notwithstanding that plaintiff had not engaged in any criminal behavior, the officers then forcibly dragged plaintiff into a police van and plaintiff then was brought by the officers to a police precinct against his will.

32.   That the seizure, search, and forcible detention of plaintiff were undertaken without a warrant, without probable cause to believe that plaintiff committed or was about to commit any crime, and without plaintiff's permission or consent.

33. That once inside the precinct, defendant Brown, in the presence of other NYPD officers, then interrogated plaintiff and inquired of plaintiff as to where on his body he had hidden drugs.

34. That plaintiff responded to Brown by stating that he did not have any drugs on his person, whereupon Brown responded, "Wrong answer bitch," and plaintiff then was forcibly taken to the ground and had his pants pulled down.

35. That plaintiff protested this treatment and demanded that a supervisor be called, whereupon Brown donned a pair of latex gloves and stated, "You can speak to the hand supervisor."

36. That plaintiff then was forcibly held down by NYPD officers while Brown, without a warrant and without plaintiff's permission or consent, conducted an invasive body search of plaintiff which included, but was not limited to, touching and searching around plaintiff's genitalia and inserting one or two fingers back and forth inside plaintiff's anus.

37. That neither Brown nor any other NYPD officers recovered any drugs or other contraband as a result of this invasive search.

38. That as a result of the aforementioned actions by defendants and the other NYPD officers, plaintiff sustained physical and emotional injuries.

39. That notwithstanding that no drugs or other contraband were recovered from plaintiff, and notwithstanding that plaintiff had not engaged in any criminal activity, defendants herein thereafter caused plaintiff to be further detained against his will at Central Booking.

40.  That on March 28, 2018, Crevatas, Payano, Garcia, and UC 376 then initiated and/or caused to be initiated a criminal prosecution of plaintiff, in which plaintiff was charged with Obstructing Governmental Administration in the Second Degree and Resisting Arrest, crimes of which plaintiff was innocent and of which Crevatas, Payano, Garcia, and UC 376 knew plaintiff to be innocent.

41.  That in support of the criminal prosecution, Crevatas signed an accusatory instrument in which he made accusations against plaintiff that were false, and that Crevatas knew to be false.

42.  That among the false accusations made by Crevatas in the accusatory instrument were the claim that, prior to the officers having approached plaintiff inside 64 Essex Street in Manhattan, Undercover Officer UC 376 told Crevatas that he observed plaintiff engage in an illegal drug transaction.

42A.  That alternatively, prior to the officers having approached plaintiff inside 64 Essex Street in Manhattan, Undercover Officer UC 376 falsely reported to Crevatas that he observed plaintiff engage in an illegal drug transaction, knowing that such an accusation was false.

43.  That among the other false accusations made by Crevatas in the accusatory instrument were the claim that Garcia and Payano identified themselves to plaintiff as police officers when they first approached plaintiff inside 64 Essex Street in Manhattan, and that plaintiff threw himself to the ground, pinning his arms beneath his body.

44.  That in support of the criminal prosecution, Garcia also signed a Supporting Deposition in which he attested to the truth of the allegations contained in the accusatory instrument signed by Crevatas, knowing that those allegations were false.

45.  That in support of the criminal prosecution, Crevatas, Payano, Garcia, and UC 376 also repeated the aforementioned false accusations to fellow officers and to the Office of the District Attorney.

46.  That the false accusations made by Crevatas, Payano, Garcia, and UC 376 constituted material evidence and evidence that likely would influence a judge and/or jury as to plaintiff's guilt or innocence of the crimes with which he was charged.

47.  That the false accusations made by Crevatas, Payano, Garcia, and UC 376 resulted in plaintiff suffering a significant deprivation of liberty, which included being prosecuted for a period of several months, being compelled to make court appearances to defend against the criminal charges brought against him, and having been deemed in violation of his parole and imprisoned for that alleged parole violation.

48.  That sixteen days into his imprisonment for the parole violation, a parole hearing was held, and Crevatas testified at that hearing and repeated the aforementioned false statements and accusations against plaintiff.

49.  That the judge who presided at plaintiff's parole hearing rejected Crevatas' testimony, determined that plaintiff was not in violation of his parole, and ordered plaintiff's immediate release from incarceration.

50.  That on August 2, 2018, all of the criminal charges brought against plaintiff were dismissed on the merits, and the criminal proceeding terminated favorably to plaintiff.

51.  That none of the defendants herein had probable cause for the aforementioned prosecution of plaintiff.

52.  That all of the defendants herein observed and were cognizant of the illegal and unconstitutional conduct of their fellow officers, had reasonable opportunities to intervene to prevent and/or stop that conduct, and deliberately failed and refused to do so.

53.  That the actions of defendants herein were intentional and malicious in nature.

54.  That as a result of the actions of defendants herein, plaintiff sustained physical and emotional injuries, suffered a deprivation of liberty, and endured and continued to endure pain and suffering and loss of enjoyment of life.

## AS AND FOR A FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 Based on Fourth and
Fourteenth Amendment Violations)

55.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

56.  That the aforementioned actions of defendants herein, including the initial seizure, search, and use of force against plaintiff at 66 Essex Street in Manhattan, the false arrest and subsequent forcible detention of plaintiff inside a police van, a police precinct, and Central Booking, the invasive search and other use of force against plaintiff inside the police precinct, the malicious prosecution of plaintiff, and the sixteen-day incarceration of plaintiff, constituted unreasonable searches and seizures of plaintiff in violation of rights guaranteed to plaintiff under the Fourth and Fourteenth Amendments to the U.S. Constitution, and entitle plaintiff to recover damages under 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
(42 U.S.C. § 1983 Based on Fifth, Sixth, and
Fourteenth Amendment Violations)

57.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

58.  That the aforementioned false statements and accusations made by defendants against plaintiff, both in written form, orally, and in testimony, and the resulting deprivation of plaintiff's liberty, constituted a denial of plaintiff's right to a fair trial, in violation of rights guaranteed to plaintiff under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and entitle plaintiff to recover damages under 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION
(42 U.S.C. § 1983 Based on Failure to Intervene)

59.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

60.  That by virtue of defendants' failure to intervene to prevent and/or stop the illegal and unconstitutional conduct of their fellow officers, plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

WHEREFORE, plaintiff demands judgment against defendants, and each of them, in the form of compensatory damages in the amount of Two Million ($2,000,000.00) Dollars, and punitive damages in the amount of Two Million ($2,000,000.00) Dollars, together with attorneys' fees pursuant to 42 U.S.C. § 1988, and together with the costs and disbursements of this action.

Dated: New York, New York
July 28, 2021

SIVIN, MILLER & ROCHE, LLP

By:   /s/ Edward Sivin
Edward Sivin, Esq.
*Attorneys for Plaintiff*
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
Fax: (212) 406-9462
Email: esivin@sivinandmiller.com