UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK McKINLEY,

            Plaintiff,

            -v.-

DETECTIVE KYLE CREVATAS, *Shield #24662*;
DETECTIVE LOGAN PAYANO, *Shield #28*;
OFFICER EDGAR GARCIA, *Shield #3118*;
DETECTIVE SEAN BROWN, *Shield #41*; NYPD
UNDERCOVER OFFICER UC 376,

            Defendants.

20 Civ. 3606 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

    Plaintiff Mark McKinley brings this civil rights action pursuant to 42 U.S.C. § 1983 against the New York City Police Department ("NYPD") officers who were involved in his May 2018 arrest and detention. Plaintiff alleges that Detective Kyle Crevatas, Detective Logan Payano, Officer Edgar Garcia, Detective Sean Brown, and Undercover Officer UC 376 (collectively, "Defendants"), violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when they falsely arrested him, unlawfully searched him, and employed excessive force in the course of his arrest. Defendants have moved for judgment on the pleadings on the basis that Plaintiff signed a general release that bars him from pursuing

---

[1] Michelle Y. Cha, a rising second-year student at the Duke University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

these claims.  For the reasons stated below, the Court converts Defendants' motion to a motion for summary judgment and denies the motion.

## BACKGROUND[2]

### A. Factual Background

#### 1. The Fourth Amended Complaint

On March 27, 2018, Plaintiff was waiting in his apartment building for an elevator to take him up to his seventh-floor apartment when he was approached by NYPD officers Crevatas, Payano, and Garcia, all of whom were dressed in plainclothes.  (FAC ¶¶ 22-24).  According to Plaintiff, without announcing their affiliation with law enforcement, the officers tackled Plaintiff to the ground, kicked and punched him, and searched his pockets.  (*Id.* at ¶¶ 25-26).  The officers then handcuffed Plaintiff, kicked him in the face, and forcibly dragged him into a police van.  (*Id.* at ¶¶ 28-31).

The officers, who were acting without a warrant, are alleged to have recovered no drugs, weapons, or other contraband from Plaintiff.  (FAC ¶¶ 30, 32).  They nevertheless transported Plaintiff to a police precinct, where Brown performed a cavity inspection on Plaintiff, expecting to recover drugs.  (*Id.* at

---

[2] The facts set forth herein are drawn primarily from Plaintiff's Fourth Amended Complaint.  (Dkt. #64 ("FAC")).  Additional factual material concerning Plaintiff's resolution of an earlier case brought against the City in New York State court is drawn from the Declaration of Andrew B. Spears in support of Defendants' Motion for Judgment on the Pleadings (Dkt. #82 ("Spears Decl., Ex. [ ]")) and the Declaration of Edward Sivin in Opposition to Defendants' Motion for Judgment on the Pleadings (Dkt. #84 ("Sivin Decl., Ex. [ ]")).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion for judgment on the pleadings as "Def. Br." (Dkt. #83); Plaintiff's memorandum of law in opposition to Defendants' motion for judgment on the pleadings as "Pl. Opp." (Dkt. #84-3); and Defendants' reply brief as "Def. Reply" (Dkt. #85).

2

¶¶ 31-36). The officers again did not recover any contraband from Plaintiff, yet Plaintiff remained detained at Central Booking. (*Id.* at ¶ 39). Thereafter, Crevatas, Payano, Garcia, and Undercover Officer UC 376 initiated a criminal prosecution against Plaintiff, charging him with Obstructing Governmental Administration and Resisting Arrest. (*Id.* at ¶¶ 40-44). The charging documents included several allegedly false allegations, including that Undercover Officer UC 376 informed Crevatas that he had observed Plaintiff engage in an illegal drug transaction while in his apartment building. (*Id.* at ¶¶ 42, 42A).

Plaintiff's ensuing prosecution required him to make several court appearances and resulted in his imprisonment for violating the terms of his parole. (FAC ¶ 47). After being incarcerated for sixteen days, Plaintiff appeared for a parole hearing, at which the presiding judge rejected Crevatas's testimony, determined that Plaintiff had not violated his parole, and ordered his immediate release from incarceration. (*Id.* at ¶¶ 48-49). On August 2, 2018, all criminal charges against Plaintiff were dismissed. (*Id.* at ¶ 50).

### 2.   *McKinley I* and the General Release

On March 28, 2018, Plaintiff filed an unrelated lawsuit in Bronx County Supreme Court, *McKinley* v. *City of New York*, No. 23566/2018 (N.Y. Sup. Ct. 2018) ("*McKinley I*"), against the City of New York and certain Rikers Island correction officers for injuries he allegedly suffered on September 20, 2017, while he was incarcerated at Rikers Island. (Pl. Opp. 4). On May 25, 2021, Plaintiff executed several documents resolving the claims asserted in *McKinley*

*I*, including a Stipulation of Discontinuance with Prejudice, a Stipulation of Settlement, and a General Release.  (Sivin Decl., Ex. 2 ("Stipulation of Discontinuance"); Spears Decl., Ex. A ("Stipulation of Settlement"); *id.*, Ex. B ("General Release")).  In relevant part, the Stipulation of Settlement stated that "this action is settled for the total amount of [$25,000], inclusive of costs, interest, attorney fees[.]"  (Stipulation of Settlement 1).  It also stated that "[P]laintiff agrees to hold harmless and indemnify the City of New York [and its] past and present officers . . . regarding any liens, claims, or past and future Medicare or secondary payments, presently known or unknown in connection with this matter."  (*Id.*).

The General Release, which lies at the heart of this motion, contains the following provision:

> Mark McKinley, the plaintiff in the action entitled *Mark McKinley* v. *The City of New York, C.O. John Doe I and C.O. John Doe II*, Supreme Court, Bronx County Index # 23566/2018, … as "RELEASOR," in consideration of the payment of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) … does hereby release and forever discharge the City of New York, and all past and present officers, directors, managers, administrators, employees, agents, assignees, lessees and representatives of the City of New York, and all other individually named defendants and entities represented and/or indemnified by the City of New York, collectively the "RELEASEES", from any and all state and federal tort claims, causes of action, suits, occurrences, and damages, whatsoever, known or unknown, including but not limited to state and federal civil rights claims, actions, and damages, which RELEASOR had, now has, or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any above-stated

>matter, cause, or thing whatsoever that occurred through the date of this RELEASE[.]

(General Release 1). The General Release also has an "exclusions" section with space for the parties to specify matters to which the release does not apply. (*Id.*). The parties, however, left this section blank. (*Id.*).

**B.     Procedural Background**

As noted above, Plaintiff commenced *McKinley I* in Bronx County Supreme Court on March 28, 2018, the day after the arrest that gave rise to the claims in the instant case. More than three years later, on May 25, 2021, Plaintiff resolved the claims asserted in *McKinley I* and filed a stipulation of discontinuance to that effect.

On May 7, 2020 — approximately a year prior to executing the General Release — Plaintiff, proceeding *pro se,* initiated the instant matter with the filing of the underlying complaint against the City of New York (the "City"), the New York Police Department, and five then-unidentified John Doe police officers. (Dkt. #2). On May 11, 2020, the Court dismissed Plaintiff's claims against the NYPD, a non-suable entity, and issued an order pursuant to *Valentin* v. *Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the City to assist Plaintiff in ascertaining the identity of the John Doe police officers named in the underlying complaint. (Dkt. #6). Over the next several months, the City filed two letters identifying four of the five John Doe police officers. (Dkt. #11, 24). Following each letter, Plaintiff filed his First and Second Amended Complaints, which amendments named the individual officers identified by the City. (Dkt. #14, 24). On March 31, 2021, the Court granted Plaintiff leave to

5

file a third amended complaint (Dkt. #49), which Plaintiff filed on May 14, 2021 (Dkt. #54).

On July 20, 2021, counsel for Plaintiff filed a notice of appearance in this case. (Dkt. #59). Eight days later, Plaintiff moved to amend his pleadings for a fourth time, seeking to remove the City as a defendant, add NYPD Undercover Officer UC 376 as a defendant, and remove certain extraneous allegations. (Dkt. #61). The Court granted Plaintiff leave to amend his pleadings on August 2, 2021 (Dkt. #63), and Plaintiff filed the Fourth Amended Complaint on August 11, 2021 (Dkt. #64).

On November 4, 2021, Defendants filed a pre-motion letter, advising the Court of their discovery of the General Release that had been executed by the parties in *McKinley I*. (Dkt. #75). On November 15, 2021, the Court issued an Order directing Plaintiff to show cause as to why his case should not be dismissed based on the terms of this release. (Dkt. #76). The following day, the Court granted Defendants' motion to stay discovery pending resolution of Defendants' contemplated motion premised on the General Release. (Dkt. #78). In a submission dated December 3, 2021, Plaintiff outlined his position as to why the General Release does not extend to the claims in this action. (Dkt. #79). Given the arguments presented by the parties, on December 6, 2021, the Court dispensed with its typical practice of holding a pre-motion conference and, instead, set a briefing schedule for Defendants' motion for judgment on the pleadings. (Dkt. #80).

On January 28, 2022, Defendants filed their opening brief and supporting papers. (Dkt. #81-83). Plaintiff filed his opposition papers on February 28, 2022 (Dkt. #84), and Defendants filed their reply brief on March 14, 2022 (Dkt. #85). On April 11, 2022, Plaintiff filed a notice of supplemental authority, advising the Court of the recent decision in *Augustin* v. *City of New York*, No. 15290/2014 (N.Y. Sup. Ct. Apr. 11, 2022). (Dkt. #86).

On May 31, 2022, the Court advised the parties that, pursuant to Federal Rule of Civil Procedure 12(d), Defendants' motion for judgment on the pleadings was being converted to a motion for summary judgment and offered Plaintiff an opportunity to supplement the record on this motion. The following day, Plaintiff submitted a letter indicating his decision to stand on his current submissions. (Dkt. #88). On June 2, 2022, the Court issued an endorsement confirming that Defendants also did not intend to file any supplemental materials. (Dkt. #89). Accordingly, Defendants' motion is fully briefed and ripe for the Court's consideration.

## DISCUSSION

**A.    Applicable Law**

    **1.    Motions for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motions for failure to state a claim." *Lively* v. *WARFA Inv.*

7

*Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch* v. *City of N.Y.*, 952 F.3d 67, 76 (2d Cir. 2020)).  Applying this standard requires courts to "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see generally Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Lively*, 6 F.4th at 305 (explaining that a court "should remain within the non-movant's pleading when deciding" Rule 12(c) motions).  A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc.*, 647 F.3d at 422 (citation omitted).

### 2. Converting a Rule 12(c) Motion into a Rule 56 Motion

Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A district court may thus convert a motion to dismiss into a motion for summary judgment when the motion presents matters outside the pleadings, provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden* v. *Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *accord Parada* v. *Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

In connection with their motion for judgment on the pleadings, Defendants submitted two exhibits appended to the Spears Declaration that extend beyond the scope of the pleadings, the Stipulation of Settlement and the General Release. (Stipulation of Settlement; General Release).[3] Plaintiff then submitted in opposition as exhibits to the Sivin Declaration (i) the declaration of Mark McKinley; and (ii) the Stipulation of Discontinuance in *McKinley I*, both of which are also beyond the scope of the pleadings and cannot be judicially noticed. (Sivin Decl., Ex. 1 ("McKinley Decl."); Stipulation of Discontinuance). Because (i) both parties submitted materials extraneous to the pleadings and (ii) consideration of these materials may resolve the case, the Court determines that conversion of this motion into one for summary judgment is appropriate. *See Garcha* v. *City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005) ("Where both parties submit extrinsic evidence in support of their positions, a

---

3   The parties executed the Stipulation of Settlement and the General Release in connection with *McKinley I*, although neither was filed on the public docket. Thus, neither is a proper subject of judicial notice, and the Court may not consider them on a Rule 12(c) motion on this basis.

9

district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56."); *Carruthers* v. *Flaum*, 388 F. Supp. 2d 360, 378-79 (S.D.N.Y. 2005) (converting a motion to dismiss to one for summary judgment where both sides submitted documents outside the pleadings). Moreover, Plaintiff has received notice and an opportunity to respond to the extrinsic factual matter presented by Defendants. (Dkt. #87). The Court thus exercises its discretion to convert Defendants' motion for judgment on the pleadings into a motion for summary judgment.

### 3. Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

---

[4] The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the nonmoving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248; *see also Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

**B.    The Scope of the General Release**

The parties disagree about the scope of the General Release and, more precisely, whether it encompasses Plaintiff's claims in this case. Defendants

11

proffer a broad interpretation of the General Release, arguing that it unambiguously released the City and all past and present City employees from any and all of Plaintiff's claims that may have occurred prior to the date Plaintiff signed the release. (Def. Br. 5-6). Plaintiff maintains that the language of the General Release admits of a narrower interpretation that covers only the claims asserted in *McKinley I*. (Pl. Opp. 8, 17). As the Court will explain, the relevant materials do not permit the Court to decide the issue as a matter of law.

### 1. General Principles of Contract Interpretation

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp* v. *City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012) (summary order) (citation omitted). "Under New York law, the threshold question of whether a contract is ambiguous is to be determined as matter of law, as is the meaning of an unambiguous contract." *Summit Health, Inc.* v. *APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390. "[A]mbiguity is determined by looking within the four corners of the document, without reference to extrinsic evidence." *Chapman* v. *N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) (quoting *Kass* v. *Kass*, 91 N.Y.2d 554, 566 (1998)). "However, where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel Corp.* v. *Abboud*, 568 F.3d 390, 397 (2d Cir. 2009).

The language of a contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (internal quotations omitted). Contract language is ambiguous if "a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (quoting *Topps Co., Inc.* v. *Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008). "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Id.* (quoting *Compagnie Financiere* v. *Merrill Lynch*, 232 F.3d 153, 157 (2d. Cir. 2000)). That said, "the court may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary." *Compagnie Financiere*, 232 F.3d at 158 (quoting *3Com Corp.* v. *Banco do Brasil, S.A.*, 171 F.3d 739, 746-47 (2d Cir. 1999)).

### 2. The General Release Is Ambiguous

Plaintiff mounts three arguments in support of his position that the General Release does not require dismissal of his claims in this case: (i) that the terms of the General Release, when combined with Plaintiff's declaration, make clear that the parties did not intend to include Plaintiff's federal civil rights claims within the scope of the release (Pl. Opp. 1, 8-10); (ii) the General Release is, at minimum, ambiguous as to its scope (*id.* at 2, 11-14); and

(iii) Plaintiff did not knowingly and voluntarily waive his federal civil rights claims (*id.* at 2-3, 15-16).  As the Court cannot conclude that the General Release is unambiguous on its face and the evidence submitted by the parties does not resolve this ambiguity, the Court denies summary judgment on this basis.

The General Release provides that Mark McKinley, as the plaintiff in *McKinley I* and in consideration of a monetary payment, released the City of New York and various related entities and individuals from a host of state and federal claims and causes of actions that he had, has, or shall have, "for, upon, or by reason of *any above-stated matter, cause, or thing* whatsoever that occurred through the date of [the] RELEASE, except as indicated below, if applicable."  (General Release 1 (emphasis added)).  Defendants submit that the phrase "above-stated" applies only to the contractual term "matter" and should not be read to extend to "cause[s]" or "thing[s]."  (Def. Br. 7).  The upshot of this interpretation is that the General Release bars claims arising from the incident at issue in *McKinley I*, as well as any claims arising from "cause[s]" or "thing[s]" that occurred prior to the date the parties executed the General Release.  (*Id.*).  On this interpretation, the General Release would bar any claims stemming from the May 2018 arrest that forms the basis of this case.  (*Id.*).  Plaintiff disagrees and asserts that the phrase "above-stated" could reasonably extend to the entire phrase, thus limiting the universe of "matter[s], cause[s], or thing[s]" within the scope of the General Release to those related to the events implicated in *McKinley I*.  (Pl. Opp. 11).

14

The Court is unable to rule out either of the parties' interpretations as a matter of law, and thus finds the terms of the General Release to be ambiguous. In arriving at this conclusion, the Court agrees with Judge Koeltl's well-reasoned analysis in *Edwards* v. *City of New York*, No. 18 Civ. 8282 (JGK), 2020 WL 5503538, at *3 (S.D.N.Y. Sept. 11, 2020), which located ambiguity in identical contractual language for precisely the reasons proffered by Plaintiff on this motion. (*See* Pl. Opp. 11-12). That other courts in this Circuit have found identical releases to unambiguously cover all claims that existed against the City or its agents at the time the release was signed does not alter the Court's conclusion. *See, e.g., Reynolds* v. *Nazim*, No. 18 Civ. 2771 (EK) (RML), 2021 WL 950054, at *2-3 (S.D.N.Y. Mar. 12, 2021); *Braxton/Obed-Edom* v. *City of New York*, No. 17 Civ. 199 (GBD) (SDA), 2019 WL 8955261, at *4 (S.D.N.Y. Sept. 17, 2019), *report and recommendation adopted*, 2020 WL 1303558 (S.D.N.Y. Mar. 19, 2020). Notably, these decisions did not discuss the particular language that this Court has determined to be ambiguous. Because, unlike *Edwards*, these ostensibly conflicting decisions do not address the arguments presented to this Court concerning the reach of the contractual term "above-stated," the Court does not believe they persuasively refute the existence of ambiguity in the General Release.

Given this finding of ambiguity, the Court may look to extrinsic evidence to determine whether there exists a genuine dispute of material fact as to whether the General Release covers Plaintiff's claims in this action. *See Sarinsky's Garage Inc.* v. *Erie Ins. Co.,* 691 F. Supp. 2d 483, 486 (S.D.N.Y.

2010) ("Where a contract is ambiguous, the parties may present extrinsic evidence regarding their actual intent."). The extrinsic evidence on this motion, however, does not resolve the ambiguities in the General Release, let alone cut so decisively in Defendants' favor as to warrant summary judgment. *See Topps Co.* v. *Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (explaining that after finding ambiguity in a contract, the next step in the analysis is to "look next to the record to determine whether any relevant extrinsic evidence is so one-sided in defendant's favor as to allow [its] interpretation to prevail on summary judgment"). For instance, Plaintiff submitted a declaration in which he states that he was not told by anyone "that the settlement could have any effect on [his] federal civil rights lawsuit against NYPD Officer Kyle Crevatas or any of the other officers involved in [his] March 27, 2018 arrest and prosecution." (McKinley Decl. ¶ 4). While this representation is not dispositive of the scope of the General Release, it rules out, at least at this stage of the proceedings, the argument that Plaintiff is posing an opportunistic interpretation of the General Release that conflicts with his understanding at the time he executed the agreement. Moreover, Plaintiff contends that the full complement of settlement documents in *McKinley I*, including the Stipulation of Settlement and the Stipulation of Discontinuance, do not make any mention of the federal civil rights claims asserted in this matter and thus do not corroborate Defendants' proffered broad scope of the General Release. (Pl. Opp. 14-15). Although the Court does not find these settlement documents to

be particularly illuminative of the proper scope of the General Release, neither do they lend support to Defendants' preferred interpretation.

Accordingly, the extrinsic evidence in the record on this motion does not resolve the ambiguous scope of the General Release. Therefore, the Court concludes that Defendants are not entitled to summary judgment on Plaintiff's claims in this case based on the terms of the General Release.

## CONCLUSION

As the Court finds there to be a genuine dispute of material fact as to whether the General Release encompasses Plaintiff's federal civil rights claims in this action, Defendants' motion for summary judgment is DENIED. The parties are directed to submit a joint status letter and a revised proposed case management plan on or before **July 6, 2022**.

The Clerk of Court is directed to terminate the pending motion at docket entry 81.

SO ORDERED.

Dated:   June 8, 2022
         New York, New York

                                        _____
                                              KATHERINE POLK FAILLA
                                              United States District Judge